UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| DARLA V. EDWARDS )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>JAMES MADISON UNIVERSITY, )<br>      Defendant. ) | Civil Action No.: 5:23-cv-00074 |

## COMPLAINT

### (Jury Trial Demanded)

Plaintiff Darla V. Edwards ("Edwards"), for her Complaint against James Madison University ("Defendant"), states as follows:

### NATURE OF ACTION

1. Edwards brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), because Defendant discriminated and retaliated against, and wrongfully terminated Edwards' employment in violation of Title VII.

2. Edwards seeks legal and equitable relief to redress the injuries done to her by Defendant, injunctive relief, equitable relief including reinstatement or front pay, back pay, benefits, compensatory damages, and reasonable attorney's fees and costs.

1

## JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 42 U.S.C. § 2000e *et seq.*, and/or 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in the Western District of Virginia and in the Harrisonburg Division under 42 U.S.C. § 2000e-5(f) which provides that venue is proper in any district court in the state; see also *General Electric Co. v. Merhige*, 1972 U.S. App. LEXIS 6632, No. 72-3327, 1972 WL 2610 (4th Cir. Nov. 20, 1972) (unpublished) (applying provision). The claims presented herein arose and Defendant resides within this judicial district and division.

5. Edwards has exhausted all necessary procedural prerequisites and has filed her Title VII claims within ninety (90) days of her receipt of a "Right to Sue" letter from the Equal Employment Opportunity Commission.

## PARTIES

6. Edwards is a 50-year-old Black, female resident of Hampton, Virginia. At all times relevant to the matters alleged herein, Edwards was an employee within the meaning of Title VII pursuant to 42 U.S.C. § 2000e(f). At all times pertinent hereto, Edwards was employed by Defendant in its sponsored program "Virginia Ed Strategies" as Director of Business and Education Partnership. At all times pertinent hereto, Defendant employed more than 500 employees.

7. Defendant is a public university and an arm of the Commonwealth. At all times pertinent hereto, Defendant has been an "employer" within the meaning of 42 U.S.C. § 2000(b) and has been subject to the provisions of Title VII, employing thousands of employees.

FACTS

8. Edwards became employed by Defendant in or about August of 2018 as Director of Business and Education Partnership in Defendant's non-profit "Virginia Advanced Studies Strategies," doing business as "Virginia Education Strategies" ("VES"). Defendant provides VES with administrative services, including Human Resources services. Edwards' employment with Defendant was contingent upon VES funding. With Edwards' help, Defendant secured a grant of almost Eleven Million Dollars for VES at the end of December of 2020. Funding for VES was thus secured through the end of 2025.

9. VES' Chief Executive Officer in 2018 was Veronica Tate ("Tate"), and Jennifer Stevens ("Stevens") was Vice President when Edwards was hired.

10. VES hired Edwards in August of 2018.

11. Upon her hire in August of 2018, Edwards became a member of Defendant's faculty and worked on grant related projects involving education and support with education and business partnerships.

12. Edwards was a full-time, benefits eligible employee.

13. Edwards initially entered into a one-year employment contract with Defendant.

14. Because of her performance, Defendant renewed Edwards' contract in August 2019, August 2020, August 2021, and August 2022.

15. Edwards has had leadership positions in the field of education for decades.

16. Edwards holds a bachelor's degree in early childhood education, a master degree in educational leadership, and an educational specialist degree, and currently she is working on her doctoral degree at the College of William & Mary.

17. Prior to her employment with Defendant, Edwards held leadership positions as a School Principal and Assistant School Principal.

18. As Principal, Edwards headed the largest elementary school in Amherst County, Virginia, where she led more than 90 faculty and staff.

19. In 2012, the Governor of Virginia appointed Edwards to the Board of Education where she served from 2012 until 2016 and provided leadership for Virginia's education system.

20. Since founding and leading Successful Innovations, Inc. ("Successful Innovations ") in 2006, Edwards has been supporting schools on effective family engagement to strengthen the connection between the school and the home. Successful Innovations assists schools in providing families with interactive resources to support their child's learning. Successful Innovations also hosts conferences for educators around the nation focused on family engagement.

21. Successful Innovations has worked successfully with Head Start centers, early childhood, and Title I schools throughout the Commonwealth of Virginia and the nation.

22. Tate was very familiar with Successful Innovations and Edwards before Edwards applied for employment with Defendant. In 2016, Tate had reached out to Edwards to create a video for Defendant.

23. In August of 2018, after conducting a due diligence review of Successful Innovations, Tate personally informed the Board of Directors of VES that there was no conflict of interest between Edwards' business activities at Successful Innovations and her employment at VES.

24. VES and Successful Innovations targeted different sectors of education: VES has always focused on K-12 college and career preparation while Successful Innovations' focus was and continues to be early childhood and Title I schools.

25. In November of 2018, Tate resigned as CEO to pursue other career opportunities. At that time, Tate encouraged Edwards to apply for the position of CEO.

26. When Edwards learned that Stevens was also applying for the position of CEO, she withdrew her own application.

27. Stevens became the new CEO in late 2018.

28. Shortly after becoming CEO of VES, Stevens hired Amanda Adams ("Adams") as Outreach & Development Coordinator.

29. Adams is white. In 2018, upon information and belief, Adams was about 30 years old. She has a bachelor's degree in sociology and a master's degree in public policy.

30. On June 4, 2020, Stevens sent a text message to Edwards, asking questions about Successful Innovations. Stevens began, "I don't think anyone ever expected you to give up ownership of your company that you worked so hard to build, and I certainly don't expect that now."

31. Stevens continued, "But there is so much we don't know about the company, how it operates, who actually does take care of the day to day operations, etc. So I think having you provide us with more of that would be very helpful. Does SI have an annual report?"

32. Edwards responded that her company "was never involved in anything that would be in competition to Virginia Ed Strategies," and assured Stevens, "[P]lease never question my loyalty. I am all in."

33. There were no further complaints or concerns about any conflict between VES and Successful Innovations, Inc. until January of 2023.

34. In 2021, Defendant "rebranded" VES, changing its name from Virginia Advanced Study Strategies to Virginia Ed Strategies. Along with that process, job titles changed. Plaintiff's new title became Director of Business and Education Partnerships. Adams' new title was Director of Innovation/Technology.

35.     In December of 2022, Stevens announced that she had appointed Adams as Vice President of VES and that Edwards would now report to Adams.

36.     Edwards complained to Stevens because she had not been considered for the position of Vice President even though she was far more experienced, far more qualified, and more senior than Adams.

37.     When Stevens ignored Edwards' complaint, Edwards told her that she was going to complain to the Board of Directors at the upcoming meeting in mid-January of 2023.

38.     In the past, Edwards had routinely participated in Board of Directors meetings.

39.     When Edwards tried to join the meeting via zoom, Stevens had locked her out of the meeting.

40.     On January 30, 2023, Stevens asked Edwards to join her for a zoom meeting to discuss a project VES was working on. When Edwards joined the meeting by zoom, Stevens and Adams announced that Edwards' ownership of Successful Innovations constituted an insurmountable conflict of interest and requested that Edwards either resign immediately or sell Successful Innovations by 1 pm the next day.

41.     This allegation of a conflict of interest was an obvious pretext: at least twice in the previous four years, Defendant had looked at Successful Innovations and found that there was no conflict.

42. Defendant had been fully informed about Edwards' business since Defendant hired her in August of 2018.

43. Defendant's new demand that Edwards resign or sell her business in a day was retaliatory and unlawful.

44. On January 30, 2023, Edwards submitted an online complaint of race discrimination and retaliation to Defendant's Office of Equal Opportunity which confirmed receipt of the complaint and promised to complete an initial evaluation within ten business days and respond to her by February 13, 2023.

45. On February 2, 2023, falsely claiming an "irreconcilable actual and/or potential conflict of interest," Defendant placed Edwards on paid administrative leave.

46. Pursuant to Defendant's Policy 1324, titled "Discrimination and Retaliation Complaint Procedure (Other than Title IX Sexual Harassment (Policy 1346) and Sexual Misconduct (Policy 1340)," "The OEO will provide written notification of the initial evaluation determination to: the complainant." Policy 1324 paragraph 6.3.b.2.i. This notification to the complainant is mandatory and due "within ten business days." *Id.* at paragraph 6.3.b.

47. Instead of investigating Edwards' complaint of race discrimination and retaliation, Defendant terminated Edwards on February 10, 2023.

48. Since February 10, 2023, VES has not had an employee of color. All of Defendant's employees at VES are white women.

49. Defendant did not notify Edwards of its initial evaluation, in violation of its own policies.

50. In its position statement to the EEOC written on August 14, 2023, Defendant repeated its pretextual allegations, again falsely claiming, "On January 30, 2023, VES notified Ms. Edwards of an identified 'severe conflict of interest' and required that she present a plan 'to remedy the conflict' if she wished to remain in [the] position with Virginia Ed Strategies."

51. Defendant knew that its narrative was false and pretextual to cover up its discriminatory and retaliatory treatment of Edwards.

52. Defendant's decisions to discriminate and retaliate against Plaintiff, to ignore her complaints of race discrimination and to terminate her employment, were made in willful, blatant and intentional disregard of and in violation of Plaintiff's rights under Title VII.

## COUNT I
## TITLE VII – RACE DISCRIMINATION IN PROMOTION DECISION

53. Each of the preceding paragraphs is incorporated herein by reference.

54. Edwards, because of her race, was denied terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

9

55. Defendant, by and through its agents and employees, discriminated against Edwards on account of her race and color in a manner that substantially and adversely affected the terms and conditions of her employment. Among other things, Defendant treated Edwards less favorably than Amanda Adams, a white employee far less qualified than Edwards, when it promoted Adams to Vice President instead of Edwards, in violation of Title VII of the Civil Rights Act of 1964, as amended.

56. Defendant's discrimination against Edwards was an intentional or reckless disregard of Edwards' rights under Title VII of the Civil Rights Act of 1991, 42 U.S.C § 2000-e *et seq*, as amended.

57. Defendant engaged in discriminatory actions described above with malice, or with a reckless indifference to Edwards' legal rights.

58. Edwards has been damaged as a result of Defendant's unlawful conduct. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered great humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, loss of income, litigation expense including attorney's fees, and consequential damages and other injury.

## COUNT II
### DISCRIMINATION AND RETALIATORY DISCHARGE ON THE BASIS OF RACE AND COLOR
### IN VIOLATION OF TITLE VII

59. Each of the preceding paragraphs is incorporated herein by reference.

60. Defendant, by and through its agents and employees, discriminated against Edwards on account of her race and color in a manner that substantially and adversely affected the terms and conditions of her employment. Among other things, Defendant retaliated against Edwards because she spoke up about her disparate treatment and harassment as well as the effect the discrimination was having on her, in violation of Title VII of the Civil Rights Act of 1964.

61. Defendant engaged in discriminatory practices with malice and reckless indifference to the federally protected rights of Edwards.Edwards has been damaged as a result of Defendant's unlawful conduct. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered great humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, together with loss of employment, loss of compensation and employment related benefits, loss of health insurance, and litigation expense including attorney's fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Darla V. Edwards, requests judgment against Defendant as follows:

A. For appropriate declaratory relief regarding the unlawful acts and practices of Defendant, pursuant to Title VII of the Civil Rights Act of 1964;

B. For an award of compensatory damages against Defendant;

C. For pre-judgment and post judgment interest;

D. For an award of back pay and benefits for violations of Title VII against Defendant;

E. For appropriate equitable or injunctive relief, including reinstatement and advancement to the position she would have occupied in absence of Defendant's illegal discriminatory and/or retaliatory conduct, or in the alternative, in the event that reinstatement or advancement are not practical, for an award of front pay and benefits;

F. For an award of an amount sufficient to offset any adverse tax consequences resulting from a lump sum aware or an aware of other relief in this action because she was required to file suit to enforce her federally protected rights;

G. For an award of incidental and consequential damages, reasonable attorney's fees and costs of this action, including expert witness fees; and

H. For such other and further relief to which Plaintiff may show herself justly entitled.

**TRIAL BY JURY IS REQUESTED**

                DARLA V. EDWARDS

                _____/s/ Tim Schulte_____
                Tim Schulte (VSB # 41881)
                Shelley Cupp Schulte, P.C.
                3 West Cary Street
                Richmond, Virginia 23220
                (804) 644-9700
                (804) 278-9634 [fax]
                schulte@scs-work.com

                Timothy E. Cupp (VSB# 23017)
                Shelley Cupp Schulte, P.C.
                1951-D Evelyn Byrd Avenue
                Harrisonburg, VA 22801
                (540)432-9988 Telephone
                (804)278-9634 Facsimile
                cupp@scs-work.com

*Counsel for Plaintiff*