CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

April 10, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DARLA EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:23-cv-00074 |
| v. ) | |
| ) | |
| JAMES MADISON UNIVERSITY, *et al.*, ) | By: Elizabeth K. Dillon |
| ) | Chief United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

In this case, Darla Edwards sued James Madison University (JMU) and Virginia Advanced Study Strategies, Inc. d/b/a Virginia Education Strategies (VES), alleging she was terminated from her employment with them based on her race. She also named as a defendant her prior supervisor and the President/CEO of VES, Jennifer Stevens. Now pending before the court is plaintiff's second motion to amend (Dkt. No. 61), seeking leave to file her third amended complaint. The motion is fully briefed. The parties have not requested a hearing, and the court finds that one is unnecessary. For the reasons set forth herein, the court will grant the motion to amend.

I. BACKGROUND

**A. Procedural Background**

After the filing of an initial motion to dismiss by JMU, Edwards filed an amended complaint without leave of court, as permitted by Rule 15. (Dkt. No. 12.) Defendants filed motions to dismiss the amended complaint, which the court granted, but without prejudice. Although the defendants had opposed amendment as futile, the court permitted amendment, and Edwards filed her second amended complaint. (Dkt. No. 48).

That complaint asserts four claims:

> Count I –   Claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Title VII) for race discrimination based on a failure to promote (against JMU only);
> Count II –  Title VII claim for discrimination and retaliatory discharge on the basis of race and color (against JMU only);
> Count III – 42 U.S.C. § 1981 claim alleging race discrimination based on a failure to promote (against VES and Stevens); and
> Count IV –  42 U.S.C. § 1981 claim alleging retaliation, based on her being placed on paid administrative leave and subsequently terminated (against VES and Stevens).

(*See generally* 2d Am. Compl., Dkt. No. 48.)

JMU filed an answer to the Second Amended Complaint. (Dkt. No. 53.) VES and Stevens filed a joint Answer, and it included a counterclaim by VES against Edwards. (Dkt. No. 52.) In its counterclaim, VES alleges that Edwards was fired because she was operating a competing business entity, Successful Innovations (SI), while employed by VES. After VES confronted her and asked her to provide a plan to resolve the conflict, Edwards "began surreptitiously gathering and stealing VES's confidential and trade secret information by sending that information to her personal email, [undoubtedly] for use on SI's behalf." (Counterclaim ¶ 3, Dkt. No. 52, at 16.)[1] VES also alleges that, after Edwards was terminated, she refused to return VES-owned equipment, including a laptop, despite repeated requests for it. (Counterclaim ¶¶ 101–18.) She subsequently told VES that the laptop had been stolen. The counterclaim asserts common-law claims of conversion, fraud, breach of fiduciary duty, and unjust enrichment (Counts I, II, V, and VI, respectively), and claims for misappropriation of trade secrets under

---

[1] The counterclaim contains significant factual detail, and it includes a number of attached exhibits in support. (*See generally* Dkt. No. 52.) The court provides here only a general overview because additional detail is not necessary to resolve the pending motion. Additionally, the term "counterclaim," in the singular, is used to refer to the entirety of VES's filing. When referring to specific claims within the counterclaim, the court will refer to the respective counts.

both the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1839 (Count III), and its Virginia counterpart (Count IV).  (*See generally id.*)

VES filed its counterclaim on September 17, 2024.  Edwards answered on October 8, 2024.  (Dkt. No. 55.)  On November 22, 2024, plaintiff filed a consent motion for extension of time to amend, which the court granted, setting a January 8, 2025 deadline for filing an amended complaint.[2]  Before that deadline expired, Edwards filed the motion to amend addressed herein.  In it, she seeks to file a third amended complaint, which adds Count V, a claim of retaliation under 42 U.S.C. § 1981 against VES and Stevens.  That count alleges that the filing of the counterclaim was retaliatory.  (Dkt. No. 66; *see* Proposed 3d Am. Compl. ¶ 127, Dkt. No. 60-1.)

**B. Parties' Arguments Regarding the Motion to Amend**

JMU takes no position on the motion to amend (Dkt. No. 63), and VES and Stevens oppose it for three primary reasons.  (Dkt. No. 64.)  First, they argue that the counts asserted in VES's counterclaim are compulsory, requiring VES to bring them or forfeit them.  And they rely on case law stating that a plaintiff cannot force a defendant to forego compulsory counterclaims unless they are "totally baseless."  (Opp'n to Mot. to Amend 2 (Opp'n) (citing *Johnson v. Helion Techs., Inc.*, Civil Action No. DKC 18-3276, 2021 WL 3856239, at *21 (D. Md. Aug. 27, 2021)).)  Because the claims are not totally baseless, their argument continues, they cannot be the adverse action underlying a retaliation claim.

Second, VES contends that even under the "slightly lower" standard of *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008), Edwards's retaliation claim fails to state a claim because VES's counterclaim has a reasonable basis in both fact (including based on Edwards's

---

[2] The proposed order submitted by plaintiff and entered by the court referenced the filing of a second amended complaint, but the motion itself clearly requested an extension of time to file a "Third Amended Complaint."  (*Compare* Dkt. No. 57-1 (proposed order) and Dkt. No. 58 (order) *with* Dkt. No. 57 (consent motion to amend).)  The motion also made clear that plaintiff intended to add a claim of retaliation.  (*See* Dkt. No. 57, at 1.)

3

alleged admissions) and in law. *Darveau*, which did not involve a compulsory counterclaim, stated that a counterclaim (or other lawsuit) could be retaliatory if it was brought with a retaliatory motive and "without a reasonable basis in fact or law." *Id.* at 343.

Third, VES and Stevens maintain that the retaliation claim cannot be brought against Stevens individually, because she is not a party to the counterclaim and did not file her own counterclaim against Edwards. Because only VES took an adverse action against Edwards, Stevens contends that she is not a proper defendant to the new retaliation claim.

In reply, Edwards argues first that VES and Stevens have improperly relied upon cases at the *summary judgment* stage when discussing whether a counterclaim is baseless. She also disputes that the counterclaim's counts are, in fact, compulsory.[3]

Further, Edwards emphasizes that the proper standard in reviewing for futility is the same as a Rule 12(b)(6) motion. Thus, the court must accept her proposed complaint's allegations as true—not those in VES's counterclaim—when determining whether amendment would be futile.

In reply to the argument that Stevens should be dismissed because she did not file the counterclaim, Edwards points out that the proposed third amended complaint alleges, "upon information and belief," that Stevens "authorized VES' retaliatory counterclaim and ordered that it be filed on VES' behalf." (Proposed 3d Am. Compl. ¶ 12.) Because Stevens, as President and

---

[3] Although the parties dispute whether VES's counterclaim is compulsory, only Edwards has engaged in the required inquiry to resolve that issue. *See, e.g.*, *Charlotte-Mecklenburg Cnty. Bd. of Education v. Brady*, 66 F.4th 205, 215 (4th Cir. 2023) (setting forth factors the court must consider in order to determine whether a counterclaim is compulsory under Federal Rule of Civil Procedure 13); *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988) (same). VES & Stevens cite generally to Rule 13(a) but do not analyze the required factors (Opp'n 6); Edwards cites to the factors and summarily submits that they all favor a finding that the counterclaim is not compulsory (Reply Supp. Mot. to Amend 9–10, Dkt. No. 67). The court need not resolve that issue at this time. Even if the court found that some or all of the counts in the counterclaim were compulsory, it still would conclude that the motion to amend should be granted. Thus, for purposes of this opinion, the court assumes but does not decide that the counts in VES's counterclaim are all compulsory.

CEO of VES, is the individual who made the decision to proceed with the counterclaim, she should also be liable for retaliation.

C. **Factual Allegations Related to the Retaliation Claim[4]**

In asserting that the counterclaim was retaliatory, the proposed third amended complaint emphasizes repeatedly the lengthy amount of time that passed between VES's knowledge about actions taken by Edwards and its decision to file a counterclaim. In particular, and according to the counterclaim's own allegations, VES discovered Edwards's alleged fraud in October 2022. In February 2023, VES was concerned that Edwards had been stealing confidential and trade secret information. Ultimately, the counterclaim was filed in September 2024, which was more than four years since VES "began to have concerns that . . . . Edwards was continuing to actively work for SI" and more than eighteen months since VES discovered Edwards had begun stealing confidential and trade secret information.

Edwards contends that VES's delay in filing a claim against Stevens about these issues supports a plausible finding that the claims were filed simply in retaliation for Edwards's lawsuit, rather than based on a real or urgent concern about the allegedly stolen information or Edwards's actions.[5] Of course, this is not necessarily so, given that compulsory counterclaims need not be filed until a certain date, and VES filed by that date, in answering Edwards' second amended complaint. (*See also* Opp'n 13–14 (arguing that the timing of its counterclaim is "irrelevant" to its merit and to whether it is retaliatory).) As discussed in context below, the

---

[4] VES and Stevens identify the following paragraphs of the proposed Third Amended Complaint as containing new allegations: paragraphs 2–3, 12, 92–111, and 131. (Opp'n 2 n.3, Dkt. No. 64.) Edwards does not dispute in her reply that those are the new paragraphs.

[5] Edwards also points out that JMU's position statement with the EEOC did not allege any theft of confidential or trade secret information. It is unclear to the court why JMU's omission of facts in its own position statement should be held against VES, and the court does not consider this fact in determining that plaintiff has plausibly stated a retaliation claim.

5

proposed amended complaint also asserts that the factual allegations in the counterclaim are false and that Edwards did not engage in the conduct alleged.

## II.  DISCUSSION

In order to state a retaliation claim under § 1981,[6] Edwards must adequately allege that: (1) she engaged in a protected activity, (2) VES and/or Stevens took an adverse action against her; and (3) there was a causal link between the two events. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc).  As noted, the parties dispute the proper legal standard for determining when a counterclaim (compulsory or otherwise) can support a retaliation claim, so the court turns to that issue first.

**A.  Legal Standard**

VES argues that because the counts in its counterclaim are compulsory, a retaliation claim can only arise from its filing of them if they are "totally baseless."  VES acknowledges that the Fourth Circuit has not used that language, but it cites to several district court decisions for that standard.  One is *Simpson v. Saggezza, Inc.*, an out-of-circuit district court decision that VES relies upon for that standard.  Case No. 17-cv-04165, 2018 WL 3753431, at *6 (N.D. Ill Aug. 8, 2018).  The *Simpson* court explained the need to limit retaliation claims based on compulsory counterclaims:

> Courts rarely find that conduct arising during the scope of existing litigation amounts to retaliation, especially the filing of a compulsory counterclaim, because at the point that the counterclaim would have been filed, the plaintiff has already asserted his rights; they will not incur significant additional expenses because they have presumably already hired counsel; and defendants must bring compulsory counterclaims or risk waiver. *Ergo v. Int'l Merch. Servs.*, 519 F.Supp.2d 765, 783 (N.D. Ill. 2007) (Leinenweber, J.)

---

[6] A § 1981 retaliation claim has the same elements as a Title VII claim. *Boyer-Liberto*, 786 F.3d at 281. The *Boyer-Liberto* court noted that "the causation standard for a Title VII claim may differ from that for a § 1981 claim," but did not reach the issue because defendants had raised no issue with respect to causation.  786 F.3d at 281 n.5.  The same is true here.

6

> (citing *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998)). Counterclaims are only considered retaliatory when they are baseless. *Id.*

2018 WL 3753431, at *6. Applying that standard to the claim before it, the court explained that the counterclaims were "not frivolous" and "were done in the normal course of litigation"; thus, they could not "be deemed retaliatory under the law." *Id.* The *Simpson* court thus granted the motion to dismiss the plaintiff's retaliation claim.

Additionally, in *Johnson v. Helion Techs. Inc.*, the court acknowledged that some courts had required that a compulsory counterclaim be "totally baseless" in order to sustain a retaliation claim. Case No. DKC 18-3276, 2021 WL 3856239, at *21 (D. Md. Aug. 27, 2021). The *Johnson* court did not expressly adopt that standard, but it found that the counterclaim undergirding the retaliation claim met it, *i.e.*, that counterclaim was totally baseless. *Id.* It thus granted summary judgment in plaintiff's favor on the retaliation claim. *Id.* at *22–23.

The primary Fourth Circuit case discussed by both parties is *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008). There, the employee filed an FLSA lawsuit after being discharged. Fifteen days later, the employer filed a fraud suit in state court, and the employee then added a retaliation claim based on the filing of the lawsuit. The district court dismissed the retaliation claim for failure to state a cause of action, but the Fourth Circuit reversed that ruling. 515 F.3d at 336, 343–44. Neither the district court's grounds for dismissing nor the reasons were reversal were based on this same issue. Instead, the appellate court held that the district court erred in relying on outdated Title VII law. But the Fourth Circuit touched upon the issue raised by VES here. In particular, it looked to Title VII law and concluded that to constitute an adverse action, the action must have been one "that would have been materially adverse to a reasonable employee" because the action "could well dissuade a reasonable worker" from engaging in

7

protected activity. *Id.* at 343. It then stated that the plaintiff before it had alleged such an action, "i.e., that his employer filed a lawsuit against him alleging fraud with a retaliatory motive and without a reasonable basis in fact or law." *Id.*

District courts within the Fourth Circuit have relied on *Darveau* to impute a requirement that an allegedly retaliatory counterclaim must be baseless in order to constitute an adverse action, usually quoting to *Darveau*'s language of "without a reasonable basis in fact or law." *E.g.*, *Johnson*, 2021 WL 3856239, at *20–21 (citing the language from *Darveau* but also noting that some courts have read "baseless" to mean "totally baseless"); *Braxton v. Jackson*, No. CV DKC 18-1946, 2019 WL 4573381, at *5 (D. Md. Sept. 20, 2019); *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 754 (E.D. Va. 2016). "A suit has a reasonable basis in fact if it raises 'a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts.'" *Castillo v. Joann Urquhart, M.D., P.C.*, 855 F. App'x 877, 879 (4th Cir. 2021) (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 (1983)). "A suit has a reasonable basis in law 'if there is any realistic chance that the plaintiff's legal theory might be adopted.'" *Id.* (quoting *Bill Johnson's Restaurants*, 461 U.S. at 747).

Having considered *Darveau* and the authority citing it, the court concludes that its test is appropriate even for compulsory counterclaims. *Accord Brach v. Conflict Kinetics Corp.*, Case No. 1:16-cv-978, 2017 WL 3267961, at *20–21 (E.D. Va. July 31, 2017) (applying *Darveau* to compulsory counterclaim); *Samirah v. Dist. Smiles, PLLC*, *Samirah v. Dist. Smiles, PLLC*, No. TDC-21-0829, 2023 WL 3932317, at *3 (D. Md. June 9, 2023) (citing *Darveau* and stating that the case law "provides no exception for compulsory counterclaims"). The fact that a counterclaim is compulsory certainly is one factor that could be considered to determine whether

8

a plaintiff adequately has stated a claim, but the *Darveau* standard can account for that fact. For example, the compulsory nature of any counterclaim weighs against a finding of retaliatory motive. *See, e.g.*, *Brach*, 2017 WL 3267961, at *20–21 (applying *Darveau* to compulsory counterclaim and noting that the compulsory nature of a counterclaim weighs heavily against a finding of retaliatory motive).

In applying the *Darveau* standard, moreover, the court also must remain faithful to Rule 15's liberal amendment standard and still must credit plaintiff's allegations in her complaint for purposes of evaluating the retaliation claim for futility under Rule 12(b)(6). It cannot *credit* the allegations in the counterclaim at this stage, especially where plaintiff has denied most (or all) of the factual allegations underlying the counts therein. *See also Barbour v. Garland*, 105 F.4th 579 (4th Cir. 2024) (explaining that in deciding whether to dismiss a retaliation claim, the court must ask whether the employer's explanation for the adverse action "is so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [the plaintiff's] claim of pretext implausible")))) (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017)).[7]

Put differently, in determining –for Rule 12(b)(6) purposes—whether the counterclaim was filed with a retaliatory motive and whether it lacks a reasonable basis in fact or law, the court cannot credit the allegations in VES's counterclaim but instead must accept as true Edwards's allegations.

**B. Edwards Adequately States a Retaliation Claim Against VES.**

Applying the Rule 15 standard to Edwards's retaliation claim, the court concludes that Edwards has stated a plausible retaliation claim against VES. As noted, her added factual

---

[7] *Barbour* was a Title VII case, but the same standards would apply to a § 1981 claim. *Boyer-Liberto*, 786 F.3d at 281.

9

allegations focus primarily on the fact that there was a lengthy delay between the supposed theft and fraud by her and the bringing of the counterclaim. (*See generally* Proposed 3d Am. Compl. ¶¶ 92–110). The delay does plausibly suggest that defendants were less concerned about these issues and not inclined to sue about them, except for in response to her complaint.

Further, Edwards alleges—albeit in general terms—that the counterclaim is "wholly unmerited." (*Id.* ¶ 111.) In other portions of her proposed amended complaint, she states that the allegation of a conflict of interest "was false and an obvious pretext." (*Id.* ¶ 74; *see also id.* ¶ 78 (claim of an "irreconcilable actual and/or potential conflict of interest" was false); *id.* ¶ 88 (Edwards engaged in no conflict).) She repeatedly denies that there was any conflict of interest in her working for or managing SI while also working for VES. (*Id.* ¶ 35 (explaining that the two businesses "have always targeted different sectors of education").)

Additionally, in her Answer to the counterclaim, Edwards has denied most of the pertinent allegations underlying the counterclaim. For example, Edwards repeatedly denies that any information she obtained from VES was confidential or trade secrets; instead, the information was all publicly available. And while she admits that she did not return one VES laptop, she claims that she could not return it because it had been stolen, a fact which she conveyed to VES. So, between her complaint and her answer to the counterclaim, Edwards's pleadings deny nearly all—and certainly the most important—facts supporting the counts in the counterclaim, and they affirmatively plead facts inconsistent with the factual bases for those counts. In short, she has plausibly alleged that the counterclaims are factually baseless.

VES counters by pointing to a few admissions by Edwards. For example, she has admitted that she forwarded some information to herself and invented a persona of Denise Cunningham as a contact for SI. (*See* Answer to Counterclaim ¶¶ 48, 51, 88–89, Dkt. No. 55.)

10

But Edwards disputes the significance of those facts and has alternative explanations for their meaning. For example, she states that SI created the Cunningham alias for the "business purpose of tracking SI activities" including "employee productivity." (*Id.* ¶¶ 48, 51.) And her Answer specifically states that the information she forwarded was publicly available, was not confidential, some was not "generated" by VES and some could not be used "to benefit SI in any way." (*Id.* ¶¶ 88–89.) In any event, the clear emphasis in the counterclaim is on the alleged competition and conflict of interest, which Edwards repeatedly denies existed. Taking her assertions as true, then, neither she nor SI was competing with VES. If true, that fact greatly undermines most of the counts in the counterclaim.

On the whole—and treating as true both Edwards's allegations in her proposed Third Amended Complaint and the denials of the factual allegations in the counterclaim—it is plausible that VES brought its counterclaim to retaliate against her and not out of any genuine concern about her engaging in any of the tortious conduct outlined, particularly where she has denied that such tortious conduct occurred. Thus, the court concludes that the retaliation claim against VES is plausible.

Although other cases differ in some respects factually, many courts have refused to dismiss similar retaliation claims on a Rule 12(b)(6) motion. In *Braxton*, for example, the court denied a motion to dismiss where the plaintiffs had plausibly alleged that lawsuits were filed with a retaliatory motive and without a reasonable basis in fact or law, even though portions of those lawsuits had survived a motion to dismiss. 2019 WL 4573381, at *5. Similarly, in *Samirah*, the court concluded that plaintiff had sufficiently alleged a § 1981 retaliation claim where he alleged that the defendants' counterclaims "were filed with a retaliatory motive and they lack a basis in fact or law." 2023 WL 3932317, at *4, 9–10. VES insists that *Samirah* is

11

factually distinguishable, and the court agrees that there was more information in that case than is alleged here supporting a retaliatory motive. But in that case, the court reasoned that it could not decide whether at least some of the claims were baseless because the facts underlying the counterclaims were in dispute and the court had no discovery before it as to "true facts," *id.* at *4, just as in this case.

To the extent that the parties dispute whether VES's claims lack a reasonable *legal* basis, the court need not decide that issue.[8] Having found that Edwards has plausibly alleged that the counterclaim is without a reasonable basis in fact, the court need not determine whether those claims are also lacking a legal basis. Thus, the court does not hold that any of VES's claims are legally baseless, nor does it adopt any of Edwards's legal challenges to those claims. In short, because Edwards has plausibly alleged that the counterclaims lack a reasonable basis in fact, amendment to add her retaliation claim would not be futile.

Although the court is allowing the retaliation claim in the context of a motion under Rules 15 and the standard under Rule 12(b)(6), nothing in this ruling precludes defendants from moving for summary judgment on this retaliation claim. Indeed, as Edwards points out in her briefing, many of the cases relied upon by VES and Stevens were decided on summary

---

[8] Edwards also challenges the "basis in law" for a number of the counts in the counterclaim. For example, she first contends that Counts I, II, V, and VI are without merit because they are state-law claims that are "displace[d] by the Virginia Uniform Trade Secrets Act." (Mem. Supp. Mot. Amend 3–4 (quoting *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E. 2d 237 (2016)). VES correctly notes, however, that at least some of its common-law claims encompass wrongful activities beyond her theft of VES's information. (Opp'n to Mot. Amend 7–8.)
   Edwards also argues that the counts based on the federal and Virginia trade secrets acts (Counts III and IV, respectively) are without merit because none of the information is trade secrets; instead, the information is generally known and readily ascertainable by proper means. (*Id.* at 4.) Lastly, Edwards contends that Counts III and IV are baseless because the owner of a trade secret must take reasonable steps to protect the information and maintain its secrecy, but VES waited months and years after suspecting (or alleging to know) that Edwards had taken its trade secrets before bringing the counterclaim. Edwards claims that despite these significant delays, VES filed its counterclaim "suddenly claiming grave harm and urgency." (Mem. Supp. Mot. Amend 7.) She maintains that these delays support a conclusion that the suit was retaliatory and not truly brought to remedy any urgent, grave harm. (*Id.*)

judgment. *Compare e.g.*, *Brach*, 221 F. Supp. 3d at 754 & n.22 (denying motion to dismiss retaliation claim that was based on filing of counterclaim and relying in part on the plaintiff's allegations in the complaint, but noting that the decision did not preclude defendants from seeking summary judgment on the retaliation claim) *with Brach,* 2017 WL 3267961, at *20 (granting summary judgment for defendant in the same case after concluding that the evidence showed that the counterclaims were not retaliatory). *Compare also Samirah*, 2023 WL 3932317, at *4, *9–10 (denying motion to dismiss retaliation claim based on employer's counterclaim) *with Samirah v. Dist. Smiles, PLLC*, No. CV MJM-21-829, 2025 WL 1018886, at *12–13 (D. Md. Apr. 4, 2025) (granting summary judgment for defendant in the same case after concluding that the counterclaims had reasonable bases in law and fact). *See also Castillo v. Joann Urquhart, M.D., P.C.*, 855 F. App'x 877, 879 (4th Cir. 2021) (affirming grant of summary judgment in employer's favor as to employee's retaliation claim based on filing of counterclaims and separate lawsuit). *But see Simpson*, 2018 WL 3753431, at *6 (dismissing retaliation claim based on compulsory counterclaim at motion-to-dismiss stage).

**C. Edwards Adequately States a Retaliation Claim Against Stevens.**

The parties do not cite to on-point authority as to Stevens's liability for retaliation under Section 1981. Stevens simply argues that she is not the "alter ego" of VES and cannot be held liable for its actions. (Opp'n 3 n.4.) Based on the court's own research, however, it appears that at least some circuits have allowed a retaliation claim against an individual where that individual encouraged an employer's adverse action, even if the action itself was taken only by the employer. *E.g.*, *Smith v. Bray*, 681 F.3d 888 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (holding that a "subordinate with a retaliatory motive may be individually liable under § 1981 for causing the employer to retaliate

13

against another employee"); *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426 (D. Md. 2013) (collecting authority for the proposition that an individual may be held liable if he "intentionally causes an employer to infringe the rights secured by section 1981") (cleaned up). *Cf. also Tshibaka v. Sernulka*, 673 F. App'x 272, 281 (4th Cir. 2016) (declining to decide whether to adopt the reasoning of *Smith* where the plaintiff admitted under oath that the individual had not acted with animus).

Here, Edwards has alleged, although only upon information and belief, that Stevens was the one who decided to file the retaliatory counterclaim and directed VES to do so. Moreover, that is a plausible inference given her position as President and CEO. Under the foregoing authority, that states a plausible claim against Stevens, even if she herself did not bring the counterclaim and is not a party to it. Accordingly, the court will also allow Edwards's retaliation claim to be brought against Stevens individually.

### III. CONCLUSION AND ORDER

The court agrees that VES has articulated many facts in support of its claims. And VES makes a number of arguments that may well result in a ruling in its favor at the summary-judgment stage. But the court, in determining whether to allow amendment here, must treat Edwards's allegations in her complaint (and denials in her answer to the counterclaim) as true. Doing so leads the court to conclude that Edwards has set forth enough factual matter to plausibly allege that the counterclaim lacks a reasonable basis in fact and thus plausibly stated a retaliation claim against both VES and Stevens.

For this reason, articulated more fully in the court's reasoning above, it is hereby

ORDERED as follows:

(1) Plaintiff's second motion for leave to amend (Dkt. No. 61) is GRANTED, and the third proposed amended complaint shall be the operative complaint. Within five days after entry of this order, plaintiff shall refile her proposed complaint (Dkt. No. 60-1 to 60–3) as her third amended complaint, so that it appears separately on the docket;

(2) Defendants VES and Stevens shall respond to the amended complaint within fourteen days of the filing of the amended complaint.

The Clerk shall provide a copy of this memorandum opinion and order to all counsel of record.

Entered: April 10, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge